J-S27017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF A.N.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M. | |
| | No. 1810 MDA 2015 |

Appeal from the Decree entered September 17, 2015
in the Court of Common Pleas of Northumberland County,
Orphans' Court at No(s): Adoptee 10 YEAR 2015.

BEFORE: SHOGAN, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW:                                    **FILED JUNE 15, 2016**

Appellant, A.M. ("Mother") appeals from the decree involuntarily terminating her parental rights to A.N.K. ("the Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Prior to the initial placement of the Child, Mother and L.K. Sr. ("Father") had an extensive history with Northumberland Children and Youth Services ("the Agency") concerning the parties' older child, and continuing after the birth of the Child in January 2012.  Following the Child's birth, multiple referrals were made to the Agency following incidents of domestic

_____

[*] Former Justice specially assigned to the Superior Court.

violence between the parties, as well as Mother's untreated mental health issues and Father's alcohol abuse. During the Thanksgiving holiday in 2013, while the Child was present, Mother threatened to kill Father and his minor son, L.K., Jr. (Mother's stepson) with a butcher knife. As a result of this incident, Mother was incarcerated, and the Child was placed in Father's care. Mother pled guilty to simple assault on March 6, 2015.

The Child was adjudicated dependent on January 16, 2014, at which time the Agency was granted legal custody of the Child, with the parties retaining physical custody. However, five days later, on January 21, 2014, the Child was placed in the physical custody of the Agency following a referral that Mother was in violation of her bail condition that she have no contact with Father or L.K., Jr. This referral occurred after Mother was found hiding in a bedroom of the parties' residence. The Child has remained in the physical and legal custody of the Agency since that date.

On January 16, 2014, the following goals were established for the parties: 1) to obtain and maintain stable housing; 2) to obtain and maintain employment and provide proof of same; and 3) to attend anger management classes until successfully discharged. Additionally, Mother was ordered to attend and successfully complete self-esteem classes, to attend individual therapy and to follow all recommendations resulting therefrom, and to attend medication clinic and remain compliant with her medications. Mother was also to attend biweekly periods of supervised visitations with the Child.

The Agency filed a Petition for the Involuntary Termination of Parental Rights ("TPR petition") as to each party on April 1, 2015, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). The Orphans' Court held an evidentiary hearing regarding the Agency's TPR Petitions on September 17, 2015 ("TPR Hearing"). The Agency presented testimony from a bonding assessment expert, three of its employees, and the Child's kinship foster mother. Both Mother and Father testified. At the conclusion of the hearing, the Orphans' Court granted the petitions based upon Section 2511(a)(1) and (8), and Section 2511(b). This timely appeal by Mother follows.[1]

## ISSUES ON APPEAL

Mother raises the following issues on appeal:

    I.    Whether the [Orphans' Court] erred in determining that [the Agency] presented clear and convincing evidence that grounds for involuntary termination exist?

    II.    Whether the [Orphans' Court] erred in determining that termination of parental rights would be in the best interests of the [Child]?

Mother's Brief at 7 (excess capitalization omitted).

## LEGAL ANALYSIS

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations

---

[1] Father's appeal from this same order is pending at 1809 MDA 2015.

of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** We may not reverse, however, merely because the record would support a different result." ***Id.*** at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). ***See In re B.L.W.*** 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citations omitted).

### Termination Pursuant to 2511(a)(1)

Section 2511(a)(1) provides that the trial court may terminate parental rights if the petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

a)  The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

   (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has held:

To satisfy the requirements of section 2511(a)(1), the moving party must produce <u>clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.</u>

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.*

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of Section 2511(a)(1). The Orphan's Court

found that, in the relevant period prior to the Agency's filing of the TPR Petition on April 1, 2015, Mother had failed to meet her established goals. The court found that she failed to maintain stable housing, had not addressed her mental health issues, did not provide proof of consistent employment, and had not pursued completion of anger management classes or otherwise addressed the issues of domestic violence with Father. The court further found that Mother's visits with the Child, as well as her contact with the Agency, were inconsistent:

> A review of the Permanency Review order entered during the six months immediately preceding this date, along with the testimony presented during the [TPR Hearing] reveals that [Mother has] failed to perform parental duties, in that [she has] provided no housing or financial support for the [Child] during this time period. . . . [Mother has] had five residences during this time period. Initially, [Mother and Father] lived together and were eventually evicted from that first home. Despite domestic violence concerns, they have intermittently lived together since that time, sometimes concealing this fact from caseworkers and authorities. Both [parents] were incarcerated for at least part of this time period . . . [Mother] twice, both for approximately a month].
>
> Although never the main concern, home conditions were noted to be cluttered, with the presence of numerous beer cans and cigarette butts, and the home was cold due to lack of insulation. Caseworkers were unable to further assess home conditions because [Mother and Father] denied them entry into the residence. . . . [Mother] provided one pay stub to [the] Agency in October of 2014, but refused to provide anything further to show that she was maintaining employment. Because of this refusal, [the] Agency was unable to confirm that either parent was maintaining employment as required by the Court's order[.]

***

- 7 -

> [Mother] has failed to meaningfully address her mental health issues. Although she completed a self-reporting mental health intake, she has failed to complete the psychological examination ordered by the Court. . . . Neither parent has pursued completion of anger management or otherwise attempted to meaningfully address the issues of domestic violence between them.

> [Mother was] afforded one hour biweekly supervised visitation, but [was] inconsistent in [her] attendance, attending only nineteen . . . visits from January 2014 until the visits were suspended in April of 2015. [Mother] did attend and complete some parenting classes, but did not complete several other classes, including anger management. [She was] unable to progress to unsupervised visitation due to [her] inability to transfer skills learned in the parenting classes that [she] attended to the visits. Visits were suspended due to the [Child's] behaviors and discomfort with the visits. [Mother has] also failed to maintain contact with [the Agency] on a consistent basis.

> \*\*\*

> In this case, where [Mother and Father] have both refused to perform certain parental duties and demonstrated their incapacity to perform other parental duties, the Court's decision to terminate [their] parental rights to the [Child] was justified by the facts clearly and convincingly presented at the [TPR Hearing].

Orphans' Court's Opinion, 11/23/15, at 3-6 (citations omitted).

Mother argues that the termination of her parental rights is not supported by the evidence of record because the Agency "failed to show that [she] evidence a settled purpose of relinquishing claim to the [Child] , or that she caused the [Child] to be without essential parental care, control or subsistence, or the conditions and causes of the incapacity, abuse of neglect or refusal cannot or will not be remedied by [her]." Mother's Brief at 13.

Mother first asserts that, prior to his removal, she was the Child's primary caretaker. Mother's Brief at 15-16. Once again, relying on her own testimony at the TPR Hearing, Mother then states that her inconsistent visits with Child were caused by transportation issues, but that "she was so bonded with him that the only other person who was able to take care the [Child] for more than an hour at a time was the [caseworker]." *Id.* at 16.

Moreover, Mother asserts that she believed she completed all of the required classes, and that she now lives in a stable, three-bedroom house with Father that they are in the process of purchasing. She further states that she is currently unable to work due to an injury, but that Father is "financially secure, and has a long employment history." *Id.*

Finally, Mother acknowledges that the biggest concerns which caused the removal of the Child "were [her] mental health and domestic violence in the house." *Id.* Once again relying on her own testimony, Mother then summarizes the progress she has made in eliminating these factors. According to Mother:

> Between Mother and Father's counseling, the couple has learned to deal with arguments, and has prevented any arguments, since counseling, from reaching the point of becoming violent. Both parents have dealt with their anger issues, and have learned to deal with problems to prevent any violence from entering the household. Therefore, the conditions which led to the [Child's] placement no longer exist.

Mother's Brief at 17.

Our review of the record refutes Mother's claims. We find that her arguments focus on the credibility of the witnesses, and we accept the Orphans' Court's crediting the testimony of the Agency's employees over Mother's testimony. *In re M.G.*, *supra*. Moreover, the Orphan's Court correctly rejected Mother's arguments regarding her ability to remedy the conditions that led to the Child's placement because "the court made no such finding. As noted above, the Court granted [the] Agency's termination petition only as to subsections (1) and (8), neither of which requires a finding that a parent is unable to remedy the conditions that led to placement." Orphans' Court's Opinion, 11/23/15, at 7.

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and we need not consider the other basis for termination under this section. *See B.L.W.*, *supra*.

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical,

and emotional needs and welfare of the child." ***In re:  Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  In addition, the Orphans' Court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.  ***Id.***

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists.  ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008).  Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.  ***Id.*** at 763.

In the instant case, the Orphans' Court relied upon the testimony from the bond assessment expert at the [TPR Hearing], noted his testimony that Mother actually had an unhealthy bond with the Child, and accepted the expert's conclusion that termination of Mother's parental rights was in the Child's best interests:

> Here, the Court examined the existence and quality of the bond between [Mother and Father] and the [Child], and a bonding assessment was completed by Dr. Kasey Shienvold on February 3, 2015.  Due to the age of the [Child], this bonding assessment consisted of interviews with both [Mother and Father] and with the foster parents, as well as the observation of the [Child] with both [Mother and Father] and the foster family, but did not include interviews with the [Child].

Dr. Shienvold observed that the [Child] displayed neither fear nor excitement during his interactions with [Mother and Father] and that he separated without difficulty or sadness at the end of the interactions. He further concluded that, "given the experiences and what [the Child] was exposed to in that first year and a half [of his life], it is very, very difficult to believe that [the Child] has a strong and healthy attachment with [Mother] that would cause him emotional strife or long-term detriment going forward."

Having acknowledged the existence of the bond, or attachment, the Court must then turn to assess the quality of that bond in determining whether termination would serve the best interests of the [Child]. The Court found that the bond between [Mother and Father] and the [Child] was not a strong, healthy or beneficial one. Because of the age of the [Child], because [both Mother and Father] exhibited the three major destabilizing factors associated with the inability to forge or maintain healthy attachments (alcohol or drug abuse, domestic violence within the home, and untreated mental health issues) which would indicate beneficial bond between [them] and the [Child], and also because of the limited insight and accountability present in [Mother and Father], Dr. Shienvold opined that, "of the destabilizers we talked about, they ticked off every box, which suggests that . . . the attachment is not a healthy one[,]" and that if the parental relationship between the [Child] and [Mother and Father] was terminated, "it would not be a long-term harmful thing." Furthermore, the [Child] has formed a beneficial bond with his foster parents.

While the Court acknowledges that both [Mother and Father] love the [Child], in the end, the attachment has nevertheless not been positive for the [Child] and has been the cause of much turmoil in his life. In the end, the Court agrees with the analysis of Dr. Shienvold and therefore believes that termination of [Mother and Father's] parental rights serves the best interest of the [Child].

Orphans' Court Opinion, 11/23/15, at 6-7 (citations omitted).

- 12 -

Mother argues that both the Agency's caseworkers and Dr. Shienvold testified that she "acted appropriately with the [Child], seemed interested in him, and attempted to sooth and care for him during the visits." Mother's Brief at 18. She then avers that, even though there were incidents of domestic violence in the house, she was never "physically abusive or aggressive towards the [Child]." *Id.* Mother concludes her argument by stating that, "[r]egardless of whether grounds for termination of parental rights exist, the Final Decree should be vacated, because termination is not in the best interests of the [Child]." *Id.* at 19.

As noted above, while the Orphans' Court acknowledged Mother's love of the Child, it accepted the expert's testimony that the bond that exists is not positive for the Child. Once again, the credibility of the Dr. Shienvold's testimony, and the weight to be given it, are matters exclusively within the province of the Orphans' Court as fact finder. *In re M.G.*, *supra*. Thus, Mother's claim fails.

## CONCLUSION

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/15/2016